**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 92-1357
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MICHAEL WATSON,

Defendant-Appellant.

* * * * * * * * *

_____

No. 92-1509
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LENNOX CAMPBELL,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____
(April 5, 1993)

Before JOLLY, DAVIS, and JONES, Circuit Judges.

DAVIS, Circuit Judge:

Lennox Campbell (Campbell) pleaded guilty to aiding and abetting the distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. He was sentenced to 211 months

imprisonment and five years supervised release. Michael Watson (Watson) pleaded guilty to aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was sentenced to 121 months imprisonment, 5 years supervised release, and a fine of $5,000.00. Campbell appeals both the denial of his motion to withdraw his plea of guilty and his sentence. Watson appeals his sentence. We consolidated these appeals because they involve codefendants and similar issues. We affirm Campbell's conviction and sentence. We vacate Watson's sentence and remand for resentencing.

I.

From May through July of 1991, undercover officers of the Dallas Police Department conducted an investigation that involved, at various times, Campbell, Watson, William Lonnie Calahan (Calahan), Eric Wright (Wright) and Patrick B. Green (Green). In July of 1991, all five participated in the sale of approximately 250 grams of cocaine powder to the undercover officers. All five were arrested at the site of the sale, the Redbird Mall in Dallas. In August of 1991, a grand jury handed down a four count indictment against the defendants. Campbell was named in counts one and four. Watson was named in all four counts.

Campbell was released on bail in November of 1991. While Campbell was out on bail, an organized crime drug task force was investigating a number of individuals in Brevard County, Florida, near Orlando. William Thomas Ray (Ray), an agent with the Bureau of Alcohol, Tobacco and Firearms, and case agent for the prosecution of Campbell and his co-defendants, learned about this

2

investigation in late December.  According to Agent Ray, "they communicated to us in late December that . . . they had a dial impulse recorder attached to the phone of the suspects in Florida," and "they wanted us to get some subscriber information on the persons' numbers that were being called in the Dallas area."

In mid-January, Agent Ray's office served a subpoena on Southwestern Bell and discovered Campbell's home phone number among those listed.  About that time, the Florida authorities told Agent Ray's office that Claudette Hubbard (Hubbard), a cousin of Campbell's, was a target of the investigation.  Agent Ray's office suspected a connection between Campbell and the Florida drug investigation.

On January 23, 1992, Campbell pleaded guilty to count four of the indictment in exchange for being dropped from count one.  A provision of that agreement provided that:

> Campbell shall cooperate with the Government, by giving truthful and complete information and/or testimony concerning Campbell's participation in and knowledge of criminal activities.  The Government agrees that if the defendant complies with section 5K1.1 of the sentencing guidelines, the Government will file a motion with the Court asking for a downward departure from the applicable guideline range.[1]

St. Clair Theodore (Theodore), of the United States Attorney's Office for the Northern District of Texas, was the lead prosecutor for the case against Campbell.  Both Agent Ray and Mr. Theodore

---

[1]U.S.S.G. § 5K1.1 provides:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

3

testified that they understood the plea agreement to imply a grant of use immunity for the information Campbell would reveal. The scope of the immunity had to be worked out, and Mr. Theodore asked Campbell to give a proffer of what he intended to tell the government. On the day the plea agreement was reached, Campbell mentioned his knowledge about drug activities in Houston and New York. He did not mention knowledge of drug activities in Florida.

In the latter part of February, Agent Ray told Mr. Theodore about the Florida drug investigation. Because of the "new criminal offense that [Campbell] was committing at the time," Mr. Theodore decided not to grant Campbell use immunity. Mr. Theodore further testified that "I could not jeopardize that investigation and [give Campbell's attorney the] information that I had received about his client." So Mr. Theodore "did not relay any further information" to Campbell's lawyer and delayed working on the use immunity agreement.

Shortly thereafter, in a letter dated February 27, 1992, Campbell gave his proffer. He said that he would tell the government information about drug transactions in Dallas, Houston, and the State of New York. Again Campbell did not allege that he could provide information about operations in Florida.

On March 10, 1992, the government received its first concrete information that Campbell was involved in an ongoing drug offense. The Florida authorities intercepted and recorded a phone conversation between Campbell and Hubbard in which the two discussed a drug deal. Campbell was subsequently indicted in the

4

Middle District of Florida on charges arising out of the Florida investigation.

The government never scheduled a debriefing meeting with Campbell. Nor did it file a 5K1.1 motion in Campbell's behalf. Campbell filed a motion to withdraw his guilty plea because the government had failed to allow him to perform his part of the plea agreement.

At a hearing on the motion, Campbell said that he spoke with Claudette Hubbard "for the purpose of getting information to pass it to the government." To this, he added the somewhat implausible story that his current roommate, Leunford Brown (Brown), had authorized him to set up drug deals for the government. According to Campbell, Brown had shown him documentation that he was a police officer. But this occurred three years earlier. Thus, Campbell testified with respect to the March 10 call:

> Campbell: Brown waked me up and asked me to call Claudette Hubbard and see if she would be interested to come here and buy some drugs and I did.
>
> Q: So Leunford Brown was asking you to make the call on behalf of him for his drug deal with Claudette?
>
> Campbell: Or to get her to come here to buy drugs so that he could bust her. That was his words to me.

Agent Ray testified that he was not aware that anyone in the government had authorized Campbell to work for the government or make deals on the government's behalf. Mr. Theodore testified that, on January 23, 1992, he fully intended to comply with the agreement.

5

The district court overruled Campbell's motion for leave to withdraw the plea of guilty. In so doing, it found that Campbell gave "preposterous" testimony and "lied" under oath. The court further found that the government had "not engaged in any misconduct." Campbell was later acquitted of the charges arising out of the Florida investigation.

The facts surrounding Watson's appeal are not as complex. He pleaded guilty to count three of the indictment, in exchange for the charges in counts one, two, and four being dropped. His plea agreement provided:

> WATSON shall cooperate with the Government, by giving truthful and complete information and/or testimony during the trial of any codefendant concerning WATSON'S and codefendant CAMPBELL, WRIGHT, GREEN and CALAHAN'S participation in and knowledge of criminal activities. The Government agrees that if the defendant complies with section 5K1.1 of the sentencing guidelines, the Government will file a motion with the Court asking for a downward departure from the applicable guideline range. . . . . The Government shall advise the Court, via the Probation Department, of the extent of CALAHAN'S [sic] cooperation.

The government interviewed Watson for Green's trial. But it did not file a § 5K1.1 motion for downward departure in Watson's behalf. At the sentencing hearing, Watson's attorney raised this issue. He told the district court that he had requested that the government file the motion, that the government had declined without explanation, to do so and that it was his understanding that they would file such a motion as part of the plea agreement. Watson testified at the hearing that he had answered the government's questions, and that he had cooperated with them and

6

stood ready to cooperate with them at all times. He stated that he understood that the § 5K1.1 motion of the government recommending downward departure was dependent on his cooperation. The government did not make any statements in response. The district court did not respond to Watson's counsel's argument, and went on to sentence Watson within the guidelines as calculated by the Probation Department in the Presentence Report. (PSR).

## II.

### A.

Campbell contends that he was induced to plead guilty by the government's promise to move for downward departure if he cooperated. He further contends that he stood ready at all times to comply with his part of the agreement. However, he argues, the government breached the agreement by not granting him immunity or seeking his assistance. Thus, contends Campbell, his guilty plea is void because it was involuntary. The government argues that it did not breach the agreement because Campbell did not satisfy the conditions upon which its alleged obligations were predicated. Specifically, the government argues that Campbell withheld knowledge of the drug deal he was negotiating in Florida.

The district court held a hearing on this issue. Afterwards, it determined that Campbell was "not entitled to withdraw his plea agreement," and that "[t]he government ha[d] not engaged in any misconduct." We interpret this to be a determination that the government did not breach the plea agreement when it refused to submit a 5K1.1 motion on Campbell's behalf.

Whether the government's conduct violated the terms of the plea agreement is a question of law. **United States v. Valencia**, ___ F.2d ___, ___, 1993 WL 46576 at * 3 (5th Cir. 1993). Campbell bore the burden of proving the underlying facts establishing a breach by a preponderance of the evidence. **United States v. Conner**, 930 F.2d 1073, 1076 (4th Cir.), **cert. denied**, 112 S.Ct. 420 (1991); **United States v. Hurtado**, 846 F.2d 995, 997 (5th Cir.), **cert. denied**, 488 U.S. 863 (1988) (defendant seeking withdrawal of a guilty plea under Fed. R. Crim. P. 32(d) has burden of proving that withdrawal is justified); **But see United States v. Tilley**, 964 F.2d 66, 71 (1st Cir. 1992). "In determining whether the terms of a plea agreement have been violated, the court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." **Valencia**, __ F.2d at __, 1993 WL 46576 at * 3.

Our review of the record persuades us that the district court's determination is correct. The plea agreement conditioned the government's obligation to submit a 5K1.1 motion on Campbell's "compl[iance] with section 5K1.1." Section 5K1.1 allows the court to depart from the guidelines if the government submits a motion "stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." So at a minimum, the plea agreement conditioned the government's obligation to submit a 5K1.1 motion on Campbell's "substantial assistance" in the investigation or prosecution of another criminal offender. We have indicated that standing ready and willing to cooperate with the government might

8

constitute "substantial assistance." **United States v. Melton**, 930 F.2d 1096, 1098-99 (5th Cir. 1991).

However, instead of substantially assisting the government's investigation and prosecution of criminal offenders, Campbell worked against those efforts by engaging in new drug offenses. Moreover, Campbell, by engaging in criminal activities, made himself the target of a new investigation. This fact made it difficult for prosecuting authorities in Dallas to debrief Campbell about his drug activities without alerting him and others to the Florida investigation. For example, the government would have been concerned about negotiating the scope of use immunity without disclosing to him that they knew that he and others were involved in ongoing criminal activity.

Campbell did not merely fail to satisfy the "substantial assistance" condition of his plea agreement. The agreement also conditioned the government's obligation to submit a 5K1.1 motion on Campbell "giving truthful and complete information" about Campbell's "participation in and knowledge of criminal activities." However, Campbell concealed information about his participation in and knowledge of criminal activities. When he entered into the plea agreement, Campbell mentioned his ability to give information about drug activity in Texas and New York, but made no mention of his ongoing activities in Florida. Similarly, in his proffer letter, Campbell expressed willingness to give information about drug activities in Texas and New York, but again concealed the fact that he was involved in ongoing criminal activity in Florida. Campbell continued this dishonest behavior by testifying that he

made the suspect phone calls in order to gather more information for the government. Not only does this conduct show that Campbell was not forthcoming with the government, but it belies his efforts to convince this Court that he stood ready and willing to discuss his criminal activities in Florida.

Campbell argues that his acquittal of the charges arising out of the Florida investigation exonerates him of any criminal wrongdoing. However, Campbell bears the burden of proving that the government breached his plea agreement. So the acquittal is not determinative.

Because Campbell failed to satisfy the "substantial assistance" and "truthful" information conditions of his plea agreement, the plea agreement did not obligate the government to submit a 5K1.1 motion in Campbell's behalf. Moreover, Campbell has not shown that any other source of authority obligated the government to submit a 5K1.1 motion on his behalf. **See Wade v. United States**, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524, 531 (1992); **United States v. Urbani**, 967 F.2d 106, 109 (5th Cir. 1992). And a district court may not downwardly depart under § 5K1.1 unless the government makes a motion to that effect. **Wade**, 118 L.Ed.2d at 530. So Campbell is not entitled to the relief that he seeks.

In his reply brief, Campbell contends that the district court abused its discretion in denying his motion for leave to withdraw his guilty plea. A district court has broad discretion in deciding whether to allow a defendant to withdraw a guilty plea. Fed. R. Crim. P. 32(d); **United States v. Rinard**, 956 F.2d 85, 88 (5th Cir. 1992). This decision calls for consideration of a number of

10

factors, including whether (1) the defendant has asserted his innocence; (2) the government would be prejudiced; (3) the defendant has delayed in filing his motion; (4) withdrawal would substantially inconvenience the court; (5) close assistance of counsel was present; (6) the original plea was knowing and voluntary; and (7) the withdrawal would waste judicial resources. **Rinard**, 956 F.2d at 88 & n. 13. None of these factors weigh in Campbell's favor. In particular, we note that Campbell made no claim of innocence in his motion for leave to withdraw his guilty plea;[2] he had assistance of counsel when he pled guilty; and his plea was knowing and voluntary. We find that the district court did not abuse its broad discretion in denying Campbell's motion to withdraw his guilty plea.

B.

Under U.S.S.G. § 3B1.1(a), the district court increased Campbell's base offense level by four levels for his organizing role in the offense. Campbell does not dispute that five individuals were involved, but contends that the evidence was insufficient to support the district court's finding that he was an organizer or leader. We disagree.

---

[2]Campbell argues that he has consistently asserted his innocence, pointing out that he originally pled not guilty, and that he maintained his innocence at the sentencing hearing and in interviews with the Probation Department. However his brief in support of his motion for leave to withdraw his plea of guilty cited only the government's refusal to file a 5K1.1 motion in his behalf. Moreover, these protestations contradict his assertions that he is entitled to a reduction in his sentence for acceptance of responsibility in light of his guilty plea and "truthful admission of his involvement in the offense and related conduct."

11

We review a district court's finding that a defendant was an organizer or leader under the clearly erroneous standard. **United States v. Chavez**, 947 F.2d 742, 746 (5th Cir. 1991). Among the considerations suggested by § 3B1.1(c)'s commentary are decision making authority, planning, organizing, recruitment of accomplices, the scope of the illegal activity, and authority over others. U.S.S.G. § 3B1.1, Application Note 3.

Detective Benjamin, of the Dallas Police Department, testified that, in July of 1991, he met with Calahan and Campbell at a Dallas Stop 'N Go and attempted to set up a 5-ounce cocaine buy. Calahan introduced Campbell as his stepfather and said that Campbell had supplied two co-defendants from whom Detective Benjamin had previously purchased cocaine. After Calahan and Detective Benjamin agreed on a deal, a meeting place, and a time, Campbell nodded in agreement.

Detective Benjamin also testified that he spoke with LeRoy White (White), a confidential informant who had since died. According to Detective Benjamin's testimony, White mentioned that there was a drug organization that sold "weight," i.e., ounces and above. White offered to introduce Detective Benjamin to those people, from whom Detective Benjamin could make "multiple buys." Among those people, White mentioned Campbell as someone who "could get me what I needed."

Detective Kenneth LeCesne (LeCesne), the Dallas Police Department Officer who supervised the investigation of Campbell and his co-defendants, testified about Campbell's role in the drug sale that precipitated Campbell's arrest. According to Officer LeCesne,

12

Campbell walked into the office of a beeper company and stood in the window, surveying the Redbird Mall's parking lot. Watson drove around the parking lot on a motorcycle. When he finished, he gave a "thumbs up" signal to Campbell. Campbell then walked out to where Watson had parked the motorcycle. He looked at a car driven by Calahan, and motioned with his head to where Detective Benjamin was parked. Calahan then sold the cocaine to Detective Benjamin.

Campbell testified that he was not organizing Calahan, Wright, Watson, and Green. He denied being present at the meeting at the Stop 'N Go. He said that he went to the mall to pay some phone bills.

The district court found that Officers Benjamin and LeCesne were "telling the truth." The court found that Campbell's testimony was not credible. The above evidence adequately supports the district court's determination that Campbell was an organizer or leader of the offense. **See United States v. Kinder**, 946 F.2d 362, 369 (5th Cir. 1991), **cert. denied**, 112 S.Ct. 2290 (1992).

Campbell's reliance on **United States v. Sostre**, 967 F.2d 728 (1st Cir. 1992), is misplaced. In **Sostre**, the First Circuit characterized the defendant's involvement in a cocaine distribution conspiracy as that of a "steerer," a person who "directs buyers to sellers in circumstances in which the sellers attempt to conceal themselves from casual observation." **Sostre**, 967 F.2d at 733. It then reversed a district court determination that the defendant had acted as a supervisor in the conspiracy, noting that he had no control over the cocaine, was not the principal with whom the government transacted the sale, needed the approval of codefendants

13

before making representations to buyers, and did not control other codefendants. **Sostre**, 967 F.2d at 733.

Campbell made no such showing. In fact, the district court heard evidence that cut in the opposite direction. For example, the district court heard testimony that Campbell had supplied the cocaine for several deals, that he was in a position to approve or disapprove a transaction negotiated by his codefendant Calahan, and that he directed the execution of the cocaine sale at the Redbird Mall. The district court did not clearly err in increasing Campbell's base offense level for his organizing role in the offense.

## C.

The district court refused to downwardly adjust Campbell's base offense level two levels under U.S.S.G. § 3E1.1(c) for acceptance of responsibility. Campbell argues that he was entitled to the downward adjustment. This argument has no merit.

A defendant bears the burden of proving to the district court that he is entitled to the downward adjustment. **Kinder**, 946 F.2d at 367. We review a district court's acceptance of responsibility determination under a standard of review "even more deferential than a pure clearly erroneous standard." **Kinder**, 946 F.2d at 367.

The district court refused to credit Campbell's testimony that he went to the mall only to "pay some bills." Campbell's attempt to minimize or deny involvement in the offense supports the district court's refusal to grant a two level reduction for acceptance of responsibility. **See United States v. Lara**, 975 F.2d 1120, 1129 (5th Cir. 1992); **United States v. Brigman**, 953 F.2d 906,

14

909 (5th Cir. 1992) ("A defendant's coyness and lack of candor demonstrate an inadequate acceptance of responsibility.").

## III.

### A.

Watson argues that the Government breached its plea agreement and that he is entitled to specific performance of the agreement. He asks to be resentenced in front of a different judge with the benefit of the government's § 5K1.1 motion. He requests a hearing for the district court to determine the extent of his cooperation.

The government argues that it did not breach the plea agreement because Watson did not give truthful and complete information regarding his involvement in the charges against him. The government also argues that the district court is not required to hold a hearing on the extent of Watson's cooperation because Watson has not alleged that the government refused to move for a downward departure for an illegal reason.

The government offered no response to refute Watson's evidence that he fully cooperated with the government as required by the plea agreement. Also, the district court did not make a finding on whether the government breached its plea agreement with Watson. Therefore, we must remand for a determination on that issue. If the district court finds that the government breached the plea agreement, we must also decide whether Watson is entitled to specific performance of the plea agreement.

In support of his argument that he is entitled to specific performance of the plea agreement, Watson relies on our decision in **United States v. Melton**, 930 F.2d 1096 (5th Cir. 1991). In **Melton**, we held that a cover letter, in which the government stated that it would recommend departure based upon defendant's full and complete debriefing and substantial assistance to the government, was part of the plea agreement. **Melton**, 930 F.2d at 1098. We also said that if the defendant, "in reliance on the letter, accepted the government's offer and did his part, or stood ready to perform but was unable to do so because the government had no further need or opted not to use him, the government [was] obliged to move for a downward departure." **Melton**, 930 F.2d at 1098-99.

The government contends that the recent Supreme Court decision in **Wade v. United States**, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), undercuts **Melton**'s reasoning to the point that **Melton** should not be followed. This issue was raised in **United States v. Ore**, No. 91-2888 at 8 (5th Cir. 1992) (unpublished), but we did not decide it at that time. In **Wade**, the Supreme Court held that a district court may not downwardly depart under § 5K1.1 unless the government makes a motion to that effect. **Wade**, 118 L.Ed.2d 530. In addition, it held that § 5K1.1 and its corresponding statute, 18 U.S.C. § 3553(e) gave the government "a power, not a duty," to file such a motion. **Wade**, 118 L.Ed.2d at 531. The Court concluded that "a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing." **Wade**, 118 L.Ed.2d at 531. A district court may review the government's exercise of discretion in this area

16

only on the same basis as other discretionary decisions by a prosecutor--district courts may grant relief if they find that the refusal was based on an unconstitutional motive such as the defendant's race or religion.  **Wade**, 118 L.Ed.2d at 531.

The crucial element in this case and in **Melton**, which was not present in **Wade**, is the existence of a plea bargain in which the government bargained away its discretion to not submit a § 5K1.1 motion.  **See United States v. Wade**, 936 F.2d 169, 170 (4th Cir. 1991).[3]  The facts of today's case are more consistent with **Santobello v. New York**, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427, 433 (1971).  In **Santobello**, the Supreme Court held that "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." **Santobello**, 404 U.S. at 262.  Implicit in this holding is the fact that the government may bargain away its discretion.  **Santobello**, 404 U.S. at 262.

We choose to harmonize **Wade** and **Santobello** in the manner suggested by the Seventh Circuit.  In **United States v. Burrell**, 963 F.2d 976, 985 (7th Cir.), **cert. denied**, 113 S.Ct. 357 (1992), the Seventh Circuit said that "a prosecutor's power to make or withhold

---

[3]The plea agreement in this case is unusual for its lack of language giving the government the unfettered discretion to determine whether it would submit a § 5K1.1 motion in the defendants behalf.  For example, the plea agreement in **Urbani**, 967 F.2d at 107 & n. 2, "unequivocally disclaimed" any obligation by the government to file a § 5K1.1 motion.  At oral argument, counsel for the government acknowledged that omission of such language was an oversight in this case.

17

a § 5K1.1 motion is a form of prosecutorial discretion which is not reviewable for arbitrariness."  However, it continued:

> [I]f a prosecutor promises a defendant to make a § 5K1.1 motion in exchange for a guilty plea, and then welshes on the bargain, a different rule applies.  "[A] guilty plea induced by an unkept bargain is involuntary. So if the prosecutor makes and does not keep a promise to file a § 5K1.1 motion, and the promise is material to the plea, the court must allow the defendant to withdraw the plea and start over."

**Burrell**, 963 F.2d at 985 (7th Cir. 1992) (citations omitted).

This is a unique case governed by a plea agreement in which the government did not reserve the discretion to determine whether the defendant's cooperation merited a § 5K1.1 motion.  In such a case a district court has authority to determine whether a defendant has satisfied the terms of his plea agreement, even if one of those terms deals with assistance to the government.

We conclude that **Melton** is still viable and requires the district court to specifically enforce the plea agreement if it finds that the government breached it.  This conclusion is supported by our recent decision in **United States v. Valencia**, ___ F.2d at ___, 1993 WL 46576 at * 4.  In that case, we remanded with orders that a plea bargain be specifically enforced where defendant "ha[d] elected specific performance rather than withdrawal of his plea as his remedy."  **Valencia**, __ F.2d at __, 1993 WL 46576 at * 4.  If specific performance is called for, Watson's sentence must be vacated, and he must be sentenced by a different judge. **Santobello v. New York**, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427, 433 (1971);  **United States v. Goldfaden**, 959 F.2d 1324, 1329 (5th Cir. 1992).

18

Of course, if the government is ordered to file a 5K1.1 motion, it remains free to inform the district court of the extent and usefulness of the defendant's cooperation. **See** U.S.S.G. § 5K1.1, Application Note 3. Moreover, the district court may or may not conclude that the defendant's cooperation warrants a downward departure from the defendant's guideline range. U.S.S.G. § 5K1.1(a).

B.

Watson argues next that he was denied due process because the district court did not inform him, before accepting his guilty plea, that the sentencing guidelines instruct the court to consider all relevant conduct in determining the sentence. Watson seeks to have his sentence modified to reflect only the criminal conduct to which he pleaded guilty.

This argument is new on appeal. Nevertheless, we have considered it and find no merit to it. In **United States v. Pearson**, 910 F.2d 221, 223 (5th Cir. 1990), **cert. denied**, 111 S.Ct. 977 (1991), we held that a defendant had no due process right to be notified, before the district court accepted his guilty plea, that his sentence would be enhanced for recidivism pursuant to the sentencing guidelines. We said: "Due process does not mandate . . . notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall." **Pearson**, 910 F.2d at 223.[4]

---

[4]In his initial brief, Watson argued that the district court did not comply with Fed. R. Crim. P. 11 when it accepted Watson's plea of guilty because the district court did not address Watson personally, and on the record, regarding the nature of the charges against him, the terms of the plea agreement, and whether he

19

IV.

For the reasons stated above, we affirm Campbell's conviction and sentence. We remand for a determination of whether the government breached Watson's plea agreement by not filing a § 5K1.1 motion in Watson's behalf. If the district court finds that the government breached the agreement, it should order specific performance of the agreement, and Watson should be resentenced by a different judge.

AFFIRMED in part, VACATED in part, and REMANDED in part.

---

understood the nature of the charges to which he pled. In his reply brief, however, he withdrew this issue. Watson "is no longer seeking to reverse his conviction nor to withdraw his plea of guilty."