**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edgar Rolando PALOMO, Defendant–Appellant.**

No. 92–2542.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1993.

Tom J. Bevans, Houston, TX (Court-appointed), for defendant-appellant.

B. Janice Ellington, Asst. U.S. Atty., Corpus Christi, TX, Paula C. Offenhauser, Asst. U.S. Atty., Peggy Morris Ronca, Ronald G. Woods, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before REAVLEY, DUHÉ, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Having pleaded guilty to conspiracy to possess with the intent to distribute over five kilograms of cocaine, Edgar Rolando Palomo challenges both his conviction and sentence, contending that the Government breached the plea agreement by refusing to conduct a debriefing interview, and that the district court erred in calculating his sentence under the Sentencing Guidelines. We AFFIRM.

I.

In April 1990, the Drug Enforcement Administration (DEA) identified Palomo's father as the organizer of a Guatemalan-based cocaine smuggling operation. Later, DEA agents discovered Palomo's involvement. Among other things, Palomo attended a meeting with a Columbian national responsible for transporting large shipments of cocaine; participated in a plan to transport approximately 150 kilograms of cocaine from

Guatemala to the United States; agreed to drive a truck in which cocaine was to be concealed in a false compartment in the gas tank; recruited another individual as a driver; and traveled to Mexico to pay a bribe in furtherance of the conspiracy.

On September 10, 1991, Palomo and other conspirators were arrested; and 116 kilograms of cocaine (including 14 in Palomo's truck) were seized during the execution of search warrants. Through debriefings, intelligence sources, and related investigations, agents documented an additional 111 kilograms of cocaine transported during the course of the conspiracy.

Palomo was charged with conspiracy to possess with the intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (count one), and possession with the intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 (count two).

On February 10, 1992, Palomo pleaded guilty to the conspiracy count; in exchange, the Government agreed to dismiss count two, stipulate that Palomo had accepted responsibility, and recommend a sentence at the bottom of the applicable guideline range. The plea agreement further provided that:

> The United States will file a motion for downward departure under Section 5K1 of the Sentencing Guidelines, should I [Palomo] provide substantial assistance.

> I understand that if I am called to testify before a Grand Jury or a trial jury concerning this information that I must not only tell the complete truth concerning any question I am asked, but I must not withhold any evidence that may relate to the guilt or innocence of any other person. I know that my response to all questions whether they be by the Assistant United States Attorney, the Defense attorney or the U.S. District Judge must be the truth.

The Government did not file a § 5K1.1 motion for downward departure prior to the sentencing hearing, because it determined that the information Palomo had provided was not helpful. At the sentencing hearing on July 2, 1992, asserting that Palomo's failure to provide substantial assistance was caused by the agents' failure to actively work on the case, Palomo's counsel stated:

> My client was one of the men that the agent previously referred to [at the sentencing of a co-defendant earlier in the hearing [1]], who was initially debriefed and cooperated in the incident where he detailed the showing of the map, etcetera.... [W]e actually agreed to cooperate at that time, then our clients were returned to custody, and it was our understanding that the agents would actively work the case. And despite our request and the lack of them following through on that, so much time has elapsed, I do agree that now it's probably nearly impossible that my client could still provide substantial assistance.

The agent denied that he had not been working on the case, stating that Palomo had provided incorrect leads, which were not helpful. The agent stated, however, that Palomo had provided information applicable to an ongoing investigation, and that the Government would consider filing a Fed. R.Crim.P. 35 motion for reduction of Palomo's sentence if he provided substantial assistance with respect to that investigation. Although Palomo's counsel asked some questions about Rule 35 procedures, he did not object to the district court's suggestion that the Government file a Rule 35 motion if Palomo cooperated in the future. Palomo made no further objections concerning the debriefing or § 5K1.1 motion for departure, and did not seek to withdraw his plea.

The district court overruled Palomo's objections to the PSR regarding his role in the offense and the drug quantity used to calculate his base offense level, but did find acceptance of responsibility. Palomo was sentenced, *inter alia*, to 262 months imprisonment (at the bottom of the guideline range of 262 to 327 months). He filed his notice of appeal a week later (July 9).

In early September 1992, Palomo testified for the Government against one of his co-defendants. A week later, the Government

---

1. Palomo was sentenced with several of his co-defendants at the same hearing.

filed a Rule 35 motion, recommending that Palomo's sentence be reduced by approximately five years. On October 27, 1992, the district court granted the motion, reducing the sentence by 60 months (to 202 months). Palomo did not appeal from the order granting the Rule 35 motion.[2]

## II.

### A.

■ Palomo maintains that the Government violated the plea agreement by failing to allow him the opportunity to provide substantial assistance through a debriefing interview. He requests specific performance and resentencing before a different judge, or withdrawal of his guilty plea. Although, at the sentencing hearing, Palomo did object concerning a § 5K1.1 departure, he did not move to withdraw his plea. Accordingly, we review his plea withdrawal claim only for plain error. *United States v. Goldfaden,* 959 F.2d 1324, 1327 (5th Cir.1992). Because "[t]he failure of the Government to fulfill its promise ... affects the fairness, integrity, and public reputation of judicial proceedings[,] ... a prosecutor's breach of a plea agreement can amount to plain error." *Id.* at 1328.

■ A defendant who alleges that a plea agreement has been breached has the option of seeking one of two remedies on appeal: (1) specific performance, which requires that the sentence be vacated and that the defendant be resentenced by a different judge; or (2) withdrawal of the guilty plea, and the opportunity to plead anew, which requires vacation of both the conviction and the sentence. *See Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Valencia,* 985 F.2d 758, 761 (5th Cir.1993); *Goldfaden,* 959 F.2d at 1329. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499. In determining whether

there has been a breach of the plea agreement, we "must determine whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Valencia,* 985 F.2d at 761. "Whether the government's conduct violated the terms of the plea agreement is a question of law." *United States v. Watson,* 988 F.2d 544, 548 (5th Cir.1993). "[Palomo] bore the burden of proving the underlying facts establishing a breach by a preponderance of the evidence." *Id.*

Our court has held that "if the prosecutor makes and does not keep a promise to file a § 5K1.1 motion, and the promise is material to the plea, the court must allow the defendant to withdraw the plea and start over." *Id.* at 553 (quoting *United States v. Burrell,* 963 F.2d 976, 985 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992)). "[S]tanding ready and willing to cooperate with the government might constitute 'substantial assistance.'" *Id.* at 549 (citing *United States v. Melton,* 930 F.2d 1096, 1098–99 (5th Cir.1991)).

■ Contrary to his assertions through new counsel on appeal, the record reflects that Palomo was debriefed. In his objections to the PSR (regarding the probation officer's conclusion that Palomo had not accepted responsibility), filed by his former attorney, Palomo stated:

> Defendant freely admitted to his specific actions in this drug conspiracy immediately after entering his plea. Defendant, Defendant's father and Defendant's attorney met with the Assistant U.S. Attorney ... and the main case agents. It was during this meeting that Defendant was *completely debriefed* and detailed all his acts, as well as attempting to provide further information to the agents.

(Emphasis added.) At the subsequent sentencing hearing, Palomo's former counsel also made several references to the debriefing. The district court implicitly found that the Government allowed Palomo an opportunity to provide substantial assistance, having

---

**2.** The record on appeal for this case was supplemented with the Rule 35 motion, Palomo's response, and the order granting the motion.

stated earlier during the hearing, in sentencing a co-defendant, that the Government did not act in bad faith in not moving to depart downward under § 5K1.1. That finding is not clearly erroneous. In sum, there was no error, much less plain error. Therefore, Palomo's claim for relief on either alternative basis fails.

■ In the alternative, Palomo's former attorney implicitly agreed that it would be appropriate for the Government to seek a reduction under Rule 35 if Palomo provided substantial assistance after sentencing. Having so acquiesced, Palomo cannot now contend, through new counsel on appeal, that the Government violated the plea agreement. Moreover, Palomo has received a 60–month reduction pursuant to the Rule 35 motion, which was based on his testimony against a co-defendant approximately two months after sentencing.[3]  As noted, Palomo did not appeal from that ruling.[4]

**B.**

Palomo challenges his sentence on two bases.  Neither has merit.

**1.**

■ First, Palomo contends that the district court erred in assessing a three-level increase in his base offense level under the Guidelines for a managerial or supervisory role in the offense.  The Guidelines provide for that increase if the defendant was a manager or supervisor in any criminal activity involving five or more participants. U.S.S.G. § 3B1.1(b). "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.3).  We review the district court's manager or supervisor finding under the clearly erroneous standard.  *United States v. Hinojosa*, 958 F.2d 624, 633 (5th Cir.1992); *see also United States v. Watson*, 988 F.2d at 550.

■ In his objections to the PSR, Palomo asserted that the probation officer's assessment of his role in the offense was arbitrarily based on his being the son of the organizer of the conspiracy.  The district court heard extensive argument on this issue, overruled the objection, and adopted the findings in the PSR.  Those findings include Palomo attending a meeting with a Columbian national responsible for transporting large shipments of cocaine, participating in a scheme to transport approximately 150 kilograms of cocaine from Guatemala to Houston, recruiting another individual to drive a truck in which

---

**3.**  We reject the Government's contention that the Rule 35 reduction renders moot the issue of whether the Government breached the plea agreement.  For example, Palomo's request for specific performance, if granted, would entitle him to vacation of the sentence and resentencing before a different judge, with the benefit of a § 5K1.1 motion by the Government.  *See Watson*, 988 F.2d at 553.  Accordingly, this is not a situation in which it is impossible for this court to grant "any effectual relief whatever".  *Church of Scientology of California v. United States*, ——  U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)).

**4.**  At oral argument, Palomo's counsel asserted for the first time that the Rule 35 reduction does not cure the claimed breach of the plea agreement, because Palomo did not have the benefit of counsel prior to his post-sentencing testimony or in the Rule 35 proceeding; because Palomo was promised by the Government that, if he would testify against the co-defendant, his sentence would be reduced to less than ten years; and because, if he (counsel) had been notified prior to Palomo's testimony, he might have been able to make a better deal than the five-year reduction.

Again, Palomo did not appeal from the Rule 35 order.  But, even assuming we can consider these claims in this appeal, it goes without saying that we will not consider issues raised for the first time at oral argument.  *E.g., United States v. Eastland*, 989 F.2d 760, 765 n. 7 (5th Cir.1993).  Although allegations similar to those made at oral argument concerning the Rule 35 proceeding are contained in Palomo's motion to supplement the record, filed in February 1993, there is no evidence in the record to support them, and the issues presented in that motion were not briefed as required by the Federal Rules of Appellate Procedure.  *See* Fed.R.App.P. 28(a).  Accordingly, Palomo's contentions regarding the Rule 35 proceedings are not properly before us.

cocaine was concealed, and traveling to Mexico to pay a bribe. The district court did not clearly err in finding that Palomo functioned as a manager or supervisor for his father in the overall cocaine smuggling venture.

### 2.

Second, Palomo maintains that the district court erred in using 227 kilograms of cocaine in calculating his base offense level. He asserts that he should have been held accountable only for the amount of cocaine that was reasonably foreseeable to him, which he contends is either only the 14 kilograms he actually transported, or, at most, that 14, plus 16 transported by his father. Palomo maintains that his co-conspirators were assessed only for the amounts they actually delivered, and that, again, he was held responsible for the entire amount only because of his status as the organizer's son.

"The district court's findings about the quantity of drugs on which a sentence should be based are factual findings which we review for clear error." *United States v. Mitchell*, 964 F.2d 454, 457 (5th Cir.1992). "The district court is not limited to considering the amount of drugs seized or specified in the charging instrument, but may consider amounts that were part of a common plan or scheme to distribute." *Id.* at 458 (citation omitted).

The district court was not limited to considering only the cocaine that Palomo transported, but could also consider relevant conduct, pursuant to U.S.S.G. § 1B1.3. With respect to a conspiracy, relevant conduct includes "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n.1).

As the Government points out, Palomo did not provide a complete record upon which we can review this challenge. The district court stated that it overruled Palomo's objection "for the reasons I've already explained in connection with ... Palomo['s father]." Palomo did not include in the record the portion of the sentencing transcript to which the district court referred, nor did he include the portions of the transcript relating to his co-

defendants' sentences. *See United States v. Hinojosa*, 958 F.2d at 632.

In any event, the portion of the record Palomo did provide supports the finding that 227 kilograms of cocaine were reasonably foreseeable to him. Palomo's managerial role in the cocaine smuggling operation headed by his father, as evidenced by, among other things, his presence at meetings with cocaine suppliers, his recruitment of a driver for the operation, and his payment of a bribe in Mexico, all support that finding; it is not clearly erroneous.

### III.

For the foregoing reasons, Palomo's conviction and sentence are

AFFIRMED.