# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30283

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

MARLON G. GLADNEY,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CR-79 -1

Before JONES, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Marlon G. Gladney pleaded guilty to one count of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). The district court sentenced him to 270 months of imprisonment and five years of supervised release. On appeal, he challenges (1) the district court's denial of his motion to suppress evidence obtained as a result of a traffic stop, (2) the district court's denial of his motion

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30283

to withdraw his guilty plea, and (3) the substantive reasonableness of his sentence. We AFFIRM.

I

On October 27, 2017, Louisiana State Police Trooper Matthew Titus pulled over a car Gladney was driving. During the stop, Titus searched the car and found a handgun, which Gladney admitted he did not lawfully possess. During a post-arrest interview, Gladney confessed to DEA agents that he distributed methamphetamine in the Shreveport, Louisiana area. Subsequent investigation led to a two-count indictment of Gladney—one count for conspiracy to possess with intent to distribute methamphetamine and one count for possession of a firearm by a convicted felon.

Gladney filed a motion to suppress the evidence and statements obtained as a result of the traffic stop. He argued that the stop was not justified at its inception, was unreasonably extended, and resulted in his invalid consent to a search of the car. A magistrate judge conducted a hearing at which Titus and Gladney both testified.

Titus testified that he pulled Gladney over for failing to yield to an emergency vehicle in violation of LA. STAT. ANN. § 32:125.[1] The DEA was investigating a drug distribution organization run by Gladney, and it asked Louisiana state police to be on the lookout for Gladney's car and stop it if there was probable cause to do so. While patrolling near the border of Texas and Louisiana, Titus saw Gladney's car pass him on the highway and exit to a nearby rest area. Titus drove past the rest area where Gladney was pulled off,

---

[1] Under that statute, when an emergency vehicle makes use of "any visual signals," the driver "shall," "[w]hen driving on an interstate highway or other highway with two or more lanes traveling in the same direction, yield the right-of-way by making a lane change into a lane not adjacent to the parked vehicle, if possible with due regard to safety and traffic conditions. If a lane change is not possible, the driver shall slow to a reasonably safe speed." LA. STAT. ANN. § 32:125(B)(1).

stopped his vehicle on the right shoulder of the highway, and activated the left directional arrow on his light bar, indicating to approaching vehicles that they should move from the right to the left lane. Soon thereafter, he witnessed Gladney pass him in the right lane despite the fact that there were no vehicles in the left lane at the time. He pulled Gladney over for failing to yield.

Titus further testified that after he pulled Gladney over, he asked for identification, and Gladney gave him an expired Louisiana driver's license. Gladney told Titus that he lived in Dallas, Texas but was on his way to the DMV in Shreveport, Louisiana to renew his license. Gladney was avoiding eye contact and his hands were "nervously shaking." When Titus ran a check on Gladney's license and criminal history, he discovered that Gladney's license was suspended, and Gladney had a criminal history involving narcotics and a conviction for aggravated battery. Titus asked Gladney to step out of the car and explained to him that because his license was suspended, he needed to call someone to get the car or it would be towed. Gladney said he would call someone. Titus then asked Gladney if he had any illegal narcotics, large amounts of currency, or illegal weapons in the car. Gladney admitted that he had a handgun in the car and that he was a violent offender. Titus asked if he could search the car, and Gladney provided verbal and then written consent.

Gladney's testimony differed somewhat from Titus's. Most relevantly, although Gladney admitted to passing Titus's vehicle in the right lane, he testified that he had no choice because there was traffic in the left lane at the time.

The magistrate judge issued a report discrediting Gladney's testimony that there was traffic in the left lane and recommending that the motion to suppress be denied. The district court adopted the magistrate judge's report and recommendation, explicitly agreeing not to credit Gladney's testimony.

No. 19-30283

After the motion to suppress was denied, Gladney agreed to plead guilty to the drug conspiracy charge in exchange for dismissal of the felon-in-possession charge. The plea agreement preserved Gladney's right to challenge the denial of his motion to suppress.

On October 25, 2018, Gladney entered his guilty plea under oath at a change of plea hearing before the magistrate judge. At that hearing, Gladney stated that he had enough time to visit with his attorney about the case and that he was satisfied with his attorney's advice. He also stated that he was pleading guilty because he was actually guilty of the offense. In terms of his sentence, he stated that he understood that he could receive a sentence between ten years to life in prison and a fine of up to ten million dollars. He also stated that he understood the magistrate judge's basic explanation of the sentencing guidelines and the fact that the guidelines range would only be a recommendation. The magistrate judge explained that if Gladney's attorney told Gladney what the guidelines range would be, "[t]hat's just his prediction; that's his best guess, that none of us really know at this point." Gladney stated that no one had made any promises to him about what his sentence would be. He said he understood that if the sentence he received was longer than he hoped for, he would still be bound by the guilty plea. Upon the recommendation of the magistrate judge, the district court accepted Gladney's guilty plea on November 7, 2018.

On November 30, 2018, we decided *United States v. Reyes-Contreras*, 910 F.3d 169, 187 (5th Cir. 2018) (en banc), in which we held that there is no valid distinction between direct and indirect force for purposes of determining whether prior convictions qualify as crimes of violence under the sentencing guidelines. On March 11, 2019, Gladney's presentence investigation report (PSR) was filed. It calculated an advisory imprisonment range of 262 to 327 months. Pertinently, this range was based on the probation officer's finding

that Gladney was a career offender under U.S.S.G. § 4B1.1. Gladney objected to the career offender enhancement, arguing that his prior convictions for aggravated battery should not qualify as crimes of violence.

On March 11, 2019—a couple days after the government advised Gladney that it would not request a guidelines reduction based on Gladney's assistance pursuant to U.S.S.G. § 5K1.1, and three days before Gladney's sentencing was scheduled—Gladney filed a motion to withdraw his guilty plea. He argued that his plea was not made knowingly and voluntarily because he believed he would receive a guidelines reduction for assisting the government pursuant to U.S.S.G. § 5K1.1, and, prior to *Reyes-Contreras*, he did not believe he would qualify as a career offender under U.S.S.G. § 4B1.1. At the hearing on this motion, Gladney and his attorney admitted that the government never promised to file a U.S.S.G. § 5K1.1 motion. Gladney's attorney also stated that he did not promise Gladney that he would receive a guidelines reduction, and Gladney agreed.

The district court denied the motion, and the case proceeded to sentencing. The district court overruled Gladney's objection to the career offender enhancement, relying on our decision in *Reyes-Contreras*. *See* 910 F.3d 169. Then, the district court heard argument from defense counsel regarding the assistance Gladney provided to the government and the circumstances of his prior crimes of violence. The district court also heard from a number of Gladney's friends and family. Ultimately, the district court adopted the factual findings in the PSR, and sentenced Gladney to a within-guidelines sentence of 270 months of imprisonment. The district court stated that it sentenced Gladney to "the bottom end of [the] guidelines range" based on his "criminal history, his personal characteristics, and his involvement in the instant offense." Gladney objected to the sentence and filed a timely notice of appeal. We address each of Gladney's arguments in turn.

No. 19-30283

II

First, Gladney challenges the district court's denial of his motion to suppress. He argues that (1) the traffic stop was not justified at its inception, (2) the traffic stop was unreasonably extended, and (3) his subsequent consent to a search of the car was invalid. The government responds that the issue is moot because the only fruit of the search was the handgun, which is irrelevant to the crime of conviction—conspiracy to possess with the intent to distribute methamphetamine. Alternatively, the government argues that Gladney has waived any challenge to the admissibility of his incriminating statements because he failed to seek suppression of them in the district court.

In his motion to suppress, Gladney sought suppression of, *inter alia*, "statements made by Mr. Gladney to Troopers Matthew Titus, Rodger Cason, and George Strickland . . . and DEA Task Force Officer Hank Haynes." The magistrate judge concluded that "[b]ecause the stop and detention of [Gladney] were completely proper and [Gladney's] statements were voluntarily made, there is no basis to suppress those statements." The district court agreed. On appeal, Gladney continues to argue that his statements are fruits of the poisonous tree and should be suppressed. At least some of these statements, like Gladney's post-arrest admission to drug trafficking, are relevant to the crime of conviction. Therefore, the issue is not moot, and Gladney has not waived it.

In reviewing the merits of the denial of Gladney's motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Mendez*, 885 F.3d 899, 907 (5th Cir. 2018). Where, as here, the district court heard live testimony, we "must view the evidence most favorably to the party prevailing below, except where such a view is inconsistent with the trial court's findings or is clearly erroneous considering the evidence as a whole." *Id.* (internal quotation marks and

citation omitted). We will uphold the district court's ruling "if there is any reasonable view of the evidence to support it." *Id.* at 908 (citation omitted).

"When a police officer makes a traffic stop, the driver of the car is seized within the meaning of the Fourth Amendment." *Brendlin v. California*, 551 U.S. 249, 251 (2007). We analyze the legality of traffic stops under the Fourth Amendment using the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). We ask: "1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *Id.*

A traffic stop is justified at its inception if the officer had an objectively reasonable suspicion that illegal activity occurred, or was about to occur, before stopping the vehicle. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "[T]he constitutional reasonableness of [a] stop does not depend upon the actual motivations of the officer involved. An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses." *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) (citations omitted).

Gladney argues that the traffic stop was not justified at its inception because he did not commit a traffic infraction, and, alternatively, because Titus provoked his traffic infraction. He recognizes that Titus's subjective motivations are irrelevant, *see Sanchez-Pena*, 336 F.3d at 437, but he argues that an officer lacks an objectively reasonable suspicion of a traffic infraction when that officer is a precipitating cause of the infraction.

In support of his first argument, Gladney points to his own testimony that there was traffic in the left lane when he passed Titus.[2] The district court explicitly discredited this testimony, however, explaining that Gladney was not credible based on other inconsistencies in his testimony. Because "[w]e will not second guess the district court's factual findings as to the credibility of witnesses," we reject this argument. *United States v. Garza*, 118 F.3d 278, 283 (5th Cir. 1997).

Gladney's second argument is also not supported by the evidence adduced at the suppression hearing. Even assuming Titus could not have an objectively reasonable suspicion of a traffic infraction that he provoked, there is no credible evidence that Titus provoked Gladney's failure to yield. Titus testified that he pulled over on the right shoulder because a cable barrier prevented him from stopping in the median. Gladney did not testify that he did not have enough time to yield or that he was otherwise lured into committing a traffic violation. The only testimony suggesting that Gladney was unable to yield was Gladney's own discredited testimony that there was traffic in the left lane. Again, "[w]e will not second guess the district court's factual findings as to the credibility of witnesses." *Id.*

Titus had an objectively reasonable suspicion that Gladney had committed a traffic infraction when he pulled Gladney over. The fact that he may have been subjectively motivated by a desire to investigate drug activity is irrelevant. *See Sanchez-Pena*, 336 F.3d at 437. The stop was justified at its inception.

---

[2] Gladney also argues that his testimony is supported by the dash cam video that was admitted into evidence at the suppression hearing. That video begins when Titus activates his rear lights, which are on top of his vehicle but distinct from the left directional arrow. These lights came on when Titus initiated the traffic stop. Therefore, it could not show the state of traffic at the time the infraction occurred.

No. 19-30283

A traffic stop must also be temporary and "last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). An officer may examine a driver's license and vehicle registration, run computer checks, and ask about the purpose and itinerary of the trip as part of his investigation of the circumstances that originally caused the stop. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010). An officer can also ask questions unrelated to the purpose of the stop as long as those questions do not extend the length of the stop. *Id.*

Gladney argues that Titus lacked reasonable suspicion to extend the stop in order to search the car. We need not decide whether Titus had reasonable suspicion to extend the stop because, as the district court found, the purpose of the stop was not completed prior to the search. As part of his investigation of the failure to yield, Titus asked Gladney about the purpose and itinerary of his trip, examined his driver's license and registration, and ran a background check. At that point, he developed reasonable suspicion of another offense— driving without a valid license. In order to effectuate the purpose of the stop, Titus needed to find a way for Gladney's car to be safely and legally removed from the shoulder of the highway. In fact, Titus testified that when a driver's license is suspended, normal protocol is to either tow the vehicle, park and lock it, or have the driver call someone to come get it. During this time, Titus was free to ask Gladney questions unrelated to the purpose of the stop as long as those questions did not prolong the length of the stop. *See id.* Gladney does not argue that Titus's questions extended the length of the stop. The stop was reasonably related in scope to the circumstances that justified it in the first place.

9

No. 19-30283

Because we find that the stop was lawful, we also reject Gladney's argument that his consent to a search of the car was the product of an illegal detention and not an independent act of free will.

III

Next, Gladney challenges the district court's denial of his motion to withdraw his guilty plea. He argues that he should have been allowed to withdraw his plea because (1) at the time he entered the plea, he believed his cooperation with the government would lead to a guidelines reduction pursuant to U.S.S.G. § 5K1.1, and (2) there was a change in the law after he entered his plea that rendered his state aggravated battery convictions crimes of violence for purposes of U.S.S.G. § 4B1.1—the career offender guidelines enhancement. The government responds that it made no promise of a U.S.S.G. § 5K1.1 motion and the plea was knowing and voluntary because the district court correctly advised Gladney of the statutory maximum penalty at the time he entered his plea.

We review the district court's denial of Gladney's motion to withdraw his guilty plea for an abuse of discretion. *See United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998).

A defendant may withdraw a guilty plea after the court accepts it but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). In ruling on a motion to withdraw a guilty plea the district court should consider the totality of the circumstances, including (1) whether the defendant asserts his innocence, (2) whether the government will suffer prejudice if the motion is granted, (3) whether the defendant delayed in filing his motion, (4) whether withdrawal would substantially inconvenience the court, (5) whether close assistance of

counsel was previously available, (6) whether the plea was made knowingly and voluntarily, and (7) whether a withdrawal would waste judicial resources. *United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

Gladney primarily argues that the district court erred by finding that his plea was knowing and voluntary. For a guilty plea to be knowing and voluntary, "the defendant must be advised of and understand the consequences of the plea." *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir. 1990). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *Id.* "Due process does not mandate . . . notice, advice, or a probable prediction of where, within the statutory range, the guidelines sentence will fall." *Id.* We have upheld a district court's denial of a motion to withdraw a guilty plea where the government chose not to file a U.S.S.G. § 5K1.1 motion after the defendant failed to provide substantial assistance. *United States v. Watson*, 988 F.2d 544, 548–50 (5th Cir. 1993).

The record illustrates that Gladney was advised of and understood the maximum prison sentence and fine for the offense he pleaded guilty to. Therefore, he understood the consequences of his plea. *See Pearson*, 910 F.2d at 222–23. Even if *Reyes-Contreras* altered the guidelines range that the district court considered, that change did not render Gladney's guilty plea unknowing or involuntary because that case did not change the maximum prison sentence or fine that applied to Gladney's crime of conviction. *See id.* Similarly, Gladney's mistaken belief that the assistance he provided to the government would lead to a guidelines reduction pursuant to U.S.S.G. § 5K1.1 did not render his guilty plea unknowing or involuntary. *See Watson*, 988 F.2d at 548–50.

In addition to considering the knowing and voluntary nature of Gladney's plea, the district court considered each of the other *Carr* factors. *See*

740 F.2d at 343–44. The district court did not abuse its discretion in weighing those factors and denying Gladney's motion to withdraw his guilty plea.

IV

Finally, Gladney challenges the substantive reasonableness of his within-guidelines sentence. Gladney argues that the district court failed to adequately consider (1) the assistance he provided to the government, (2) the relatively small quantity of drugs attributed to him in the PSR, and (3) the fact that his criminal history is overrepresented in the PSR. The government responds that the district court considered all these factors along with Gladney's extensive and violent criminal history, and Gladney's within-guidelines sentence is reasonable.

We apply a rebuttable presumption of reasonableness to Gladney's properly calculated within-guidelines sentence. *See United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). "The presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *Id.*

The record illustrates that the district court adequately considered all of the facts that Gladney urges on appeal. Gladney's disagreement with the district court's balancing of the 18 U.S.C. § 3553(a) factors is not sufficient to rebut the presumption of reasonableness afforded to his within-guidelines sentence. *See United States v. Illies*, 805 F.3d 607, 609–10 (5th Cir. 2015).

V

For the foregoing reasons, the judgment of the district court is AFFIRMED.