UNITED STATES of America,
Plaintiff–Appellee,

v.

James Richard MELTON,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald James ROGER,
Defendant–Appellant.

Nos. 89–8016, 89–8101.

United States Court of Appeals,
Fifth Circuit.

April 25, 1991.

James R. Melton, pro se.

Walter Taylor, Scott, Douglas & Luton, Austin, Tex., for defendant-appellant Melton.

Mark H. Marshall, Asst. U.S. Atty., Austin, Tex., LeRoy M. Jahn, Asst. U.S. Atty., and Helen M. Eversberg, Ronald F. Edere, U.S. Attys., San Antonio, Tex., for plaintiff-appellee U.S.

Mark L. Perlmutter, Austin, Tex. (Court-appointed), for defendant-appellant Roger.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

These consolidated appeals present challenges to sentencing. Donald James Roger and James Richard Melton pled guilty to conspiracy to possess with intent to distribute over 100 kilos of marihuana. Each received a sentence of imprisonment, supervised release, a fine, and the statutory special assessment. In addition to challenging his sentence Roger contends that the government breached an agreement with him. For the reasons and purposes assigned, we vacate the sentences imposed on Roger and Melton and remand for further proceedings and resentencing.

### Background

In July of 1988 Charles Andrus, a confidential informant for the Drug Enforcement Administration (DEA), called Roger to tout him on approximately 500 pounds of marihuana. Roger located an interested buyer and he and Andrus then negotiated price, manner of storage, method of transportation, and payment procedure. The arrangements called for Roger and the buyer to go to an Austin motel, secure separate rooms and then contact Andrus for instructions. It was decided that the marihuana dealer, who was an undercover DEA agent, would meet Roger at the motel to consummate the transaction.

At the appointed time the following transpired under the watchful eyes of several surveillance units posted by the DEA. The undercover agent showed Roger a sample while Melton and another codefendant, Roger Keith Patton, moved objects from an auto and pickup truck into a trailer attached to the auto. Roger then exited the motel, had a short conversation with Melton and Patton, and then returned to the motel with Melton. Roger, driving Melton's truck, then followed a DEA agent to a warehouse where the marihuana was located. Roger placed most of the load into the truck. In the meantime Patton and Melton took the trailer to a residence in Austin. As they drove back to the motel Patton and Melton were stopped and placed under arrest. Roger was arrested upon his return to the motel.

Melton had $10,000 in his pocket. A search of the trailer, subsequently determined to belong to Patton, disclosed wood, carpentry equipment, a blue tarp which smelled of marihuana, a briefcase, and a plastic bag containing $145,020 in cash.

A grand jury indicted Melton, Roger, and Patton for conspiracy to possess with intent to distribute over 100 kilos of marihuana and with the substantive offense of possession with intent to distribute, 21 U.S.C. §§ 846 and 841(a)(1). In addition, Roger was charged with using a telephone to facilitate the distribution of marihuana, 21 U.S.C. § 843(b).

On April 27, 1989 Melton and Patton entered pleas of guilty to the conspiracy count. On May 1, 1989 Roger likewise pled guilty. On November 1, 1989 Melton was sentenced to 60 months imprisonment followed by a four-year term of supervised release and a $10,000 fine. On that same day Patton was sentenced to 12 months in prison and three years supervised release. Patton's sentence resulted from the government's motion for a departure under Fed.R.Crim.P. 35. On November 17, 1989 Roger received a sentence identical to that imposed on Melton. Both timely appealed. Roger maintains that the government breached their agreement by not moving for a downward departure and that the court erred by imposing grossly disparate sentences on him and Patton. Melton urges error in the trial court's rejection of his request to be classified as a minor participant and sentenced as such under the guidelines.

### Analysis

■ Prior to the entry of any of the guilty pleas Roger met with members of the U.S. Attorney's office and told them

what he knew of the matter. On April 26, 1989, Roger's court-appointed counsel received a proposed plea agreement from the AUSA. In the letter of transmittal the attorney for the government stated: "In addition, I will recommend departure to the court based upon your client's full and complete debriefing and substantial assistance to the government in resolving this case as outlined above." The plea agreement, which Roger signed on May 1, 1989, is silent with reference to departure but provides in paragraph 8 that:

> [T]his agreement constitutes the entire agreement between the United States Attorney for the Western District of Texas, the defendant, and his counsel. It cannot be modified except in writing signed by all parties.

At the sentencing hearing the AUSA informed the court that Roger had complied with the terms of the plea agreement; he then noted that the government made no motion for departure but left that matter to the court's discretion. Roger's counsel earnestly advances this as a breach of the agreement between the government and his client relative to Roger's commitment to debrief, enter a guilty plea, and stand ready to cooperate with the government to resolve the case. Counsel maintains that his client did everything he was asked to do. Roger did not testify against the codefendants because no trials were had; all entered guilty pleas.

This matter turns on the legal significance we give to the AUSA's transmittal letter. The government suggests that we should ignore it, that we should look no further than the four corners of the plea agreement. Under the factual circumstances of this case we decline that invitation to judicial myopia. The letter contains counsel's offer that the government would move for a downward departure based on Roger's full debriefing and substantial assistance in resolving the case. Roger insists that he fully debriefed, pled guilty to the conspiracy count, and stood ready to do whatever else he could that he was asked

to do but that he received no further requests or instructions. At sentencing, Roger stood before the court awaiting the government's motion for downward departure, as had been done in Patton's case a few weeks earlier. No motion was forthcoming.

The record before us is inadequate for the proper resolution of this issue. Although the letter is not part of the plea agreement proper it does contain an offer by the government which Roger ostensibly accepted. We have seen this cover letter/plea agreement coupling before, from the same division of the U.S. Attorney's office in the Western District of Texas. In *United States v. Fields*, 906 F.2d 139 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 200, 112 L.Ed.2d 162 (1990), the government made the same argument as it offers here, that the letter technically was not a part of the plea agreement.[1] We made an observation in *Fields* which is relevant to this case, stating: "The two documents, when read together, demonstrate the agreement that if Appellant gave a full debriefing and his full cooperation then the government would recommend a downward departure." *Id.* at 142. The same appertains in the case at bar, but the record before us is incomplete. We have counsel's assurance but we cannot determine with the requisite certainty whether Roger, in reliance on the government's representations in the letter, accepted the government's offer and did all that he was capable of doing under the circumstances. That is unclear from the record. What is clear to us, however, is that the government may neither misrepresent its intentions nor renege on representations reasonably relied and acted upon by defendants and their counsel in instances such as is here presented. Roger's sentence, therefore, must be vacated and the matter remanded to the district court in order that this determination may be made. If Roger, in reliance on the letter, accepted the government's offer and did his part, or stood ready to perform but was unable to

---

**1.** The plea bargain in *Fields* contains language identical to that quoted above. It apparently is part of the boilerplate provisions used in the subject district.

do so because the government had no further need or opted not to use him, the government is obliged to move for a downward departure. On remand, the court may enter whatever sentence it deems appropriate.

■ Roger also piqued our interest with his complaint of a gross disparity between the five-year sentence he received and the one-year sentence Patton received after the downward departure. Differences in sentences are not necessarily inappropriate, *United States v. Juarez–Ortega*, 866 F.2d 747 (5th Cir.1989); gross disparities between defendants similarly situated as a result of differences in the government's performance of its obligation to move for a downward departure under plea agreements may be. Roger maintains that he and Patton were equally involved in the incident at bar but that he had less to offer to the government because he knew less than Patton; he did not have as great an overall involvement; and he did not have a persona like Patton that could move easily through the underworld gathering information. Roger contends that because he had less "chips" or "trading material" than Patton, he received a heavier sentence. We cannot determine from the record before us whether such an inequity occurred. On remand we urge the district court to address this question and ascertain whether there is any merit to this complaint which might require redressing by the court.

■ Finally, we address Melton's appeal. He contends that he should have received the two-level reduction given to minor participants under U.S.S.G. § 3B1.2. Melton argues that he was not involved in the negotiations and did not know the amount of the contraband. He contends that his agreement to purchase some of the marihuana and to allow his truck to be used constituted only a minor role in the offense. Melton's counsel forcefully argues that Melton was significantly less culpable than his coconspirators and that he is entitled to the reduction. The trial court declined to give that reduction. Counsel requested that the court articulate the factual basis for the court's finding and the reasons for refusing the reduction. The court did not do so but merely reiterated the finding that Melton was an average participant.

The commentary to § 3B1.2 provides that the determination of a defendant's status as a minor participant is "heavily dependent upon the facts of the particular case." The determination of participant status is a complex fact question, which requires the court to consider the broad context of the defendant's crime. *United States v. Mejia–Orosco*, 868 F.2d 807, clarifying 867 F.2d 216 (5th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). In the instant case we cannot perform the appellate function for the record is inadequate. The district court must articulate the factual basis for the finding that, in this particular offense, Melton was an average participant. The sentencing court must state for the record the factual basis upon which it concludes that a requested reduction for minor participation is, or is not, appropriate. In order to give the court on remand the maximum flexibility in this matter, we vacate Melton's sentence so that upon completion of whatever proceedings are deemed necessary the court will be free to enter such sentence as it then deems appropriate.

The sentences of Roger and Melton are VACATED and these matters are REMANDED for further proceedings consistent herewith.