NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3373
_____

UNITED STATES OF AMERICA

v.

ERIC MOODY,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-10-cr-00192-002)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2012

Before:  SCIRICA, AMBRO and FISHER, *Circuit Judges*.

(Filed: June 12, 2012)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Pursuant to a written plea agreement, Eric Moody ("Moody") pled guilty to

conspiracy to manufacture and utter fictitious obligations, in violation of 18 U.S.C. § 371.

The District Court sentenced Moody to a term of 27 months' imprisonment.  Moody

appeals, arguing that the Government breached the terms of the plea agreement. We will affirm.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On June 16, 2010, a grand jury returned a five-count indictment against Moody and two other individuals, following a federal investigation into counterfeit checks and currency. The indictment charged Moody with engaging in a conspiracy to manufacture and utter fictitious obligations of an organization and counterfeit obligations of the United States in violation of 18 U.S.C. § 371, as well as the manufacture and utterance of such instruments in violation of 18 U.S.C. §§ 514(a)(1)-(2) and 471. The Government offered Moody a plea agreement, and on October 5, 2010, the federal public defender emailed the U.S. Attorney: "[Moody] is going to sign plea agreement, you should get it next week, is that okay? And will you give him credit for coop with state attorney general office?" The U.S. Attorney responded the same day: "If he cooperated, I'll give him credit. Just let me know who he spoke to and what he did." On October 12, 2010, Moody entered into a plea agreement with the Government under which he agreed to plead guilty to one count of conspiracy to manufacture and utter fictitious obligations, in violation of 18 U.S.C. § 371. The plea agreement stated that:

"The defendant has agreed to cooperate with the United States. Upon completion of the cooperation, if the United States believes the defendant has provided 'substantial assistance' pursuant to [18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1] and has fully complied with the terms of this Agreement, the United States may request the Court to depart below any applicable mandatory minimum range only, any guideline range only, or both, when fixing a sentence for this defendant."

It also contained a list of grounds upon which the Government would decline to seek a downward departure, such as if Moody breached any terms of the agreement. The District Court held a plea hearing on December 9, 2010, and accepted Moody's guilty plea. During the plea colloquy, Moody indicated that he understood the plea agreement.

According to the Presentence Investigation Report ("PSR"), Moody's total offense level was 13, his criminal history category was VI, and the resulting Guidelines range was 33 to 41 months. Neither party objected to this report.

On August 10, 2011, Moody sent the District Court a letter explaining the assistance he had provided to the Pennsylvania Office of the Attorney General beginning in March of 2010, after he was arrested on state felony drug charges. The Government responded that it would not move for a downward departure, because it "would not make sense to give [Moody] a double benefit" and, furthermore, Moody's cooperation with state officials was not related to the federal counterfeit investigation.

At sentencing on August 15, 2011, the District Court considered the substantial assistance issue in detail. Moody's counsel argued that the Government had violated the terms of the plea agreement by refusing to move for a downward departure despite its

promise to do so if Moody provided substantial assistance to the state attorney general. The U.S. Attorney responded that the Government had only intended to give Moody credit if he cooperated as a result of his federal arrest, but not if he cooperated as a result of a separate, unrelated state arrest.

The District Court did not rule on whether the United States had violated the plea agreement, but varied from the 33 to 41 month Guidelines range and sentenced Moody to 27 months' imprisonment. In doing so, it stated that it had "taken into consideration the fact that there may have been a misunderstanding between defense counsel and government counsel concerning a 5K1." Moody timely filed his notice of appeal.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "Whether the government breached the plea agreement is a question of law which this Court reviews *de novo*." *United States v. Swint*, 223 F.3d 249, 252 (3d Cir. 2000).

## III.

Moody argues that the Government breached the terms of the plea agreement when it failed to move for a downward departure pursuant to U.S.S.G. § 5K1.1. Plea agreements are contractual in nature, so we apply contract law to determine whether the plea agreement was breached. *See United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). We require the Government to strictly comply with the terms of the

4

agreements in order to "preserve the integrity of our constitutional rights." *United States v. Larkin*, 629 F.3d 177, 186 (3d Cir. 2010). "In determining whether the plea agreement has been breached, courts must determine 'whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty[,]'" *Nolan-Cooper*, 155 F.3d at 236 (quoting *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992)), and we will not "rely upon a 'rigidly literal' approach to the construction of the terms of the plea agreement." *Id.* Because the plea agreement did not require the Government to move for a downward departure, and Moody could not reasonably construe the plea agreement to contain such a requirement, we agree with the District Court that the Government did not breach the terms of the plea agreement.

Moody contends that the Government was required to move for a downward departure based on the substantial assistance he provided to Pennsylvania authorities. However, the plea agreement places no such limitations on the Government's discretion. The plea agreement lists certain grounds upon which the Government will most certainly decline to move for downward departure, but even where such grounds do not exist, the plea agreement grants the Government discretion to determine whether to move for downward departure. Paragraph 12 of the plea agreement, entitled "Substantial Assistance," provides that "if the United States believes the defendant has provided 'substantial assistance' . . . the United States *may request* the Court to depart below any applicable mandatory minimum range . . . when fixing a sentence for the defendant."

5

The plea agreement also includes a standard merger, or integration clause, providing that the agreement as written is "the complete and only Plea Agreement . . . [and] supersedes all prior understandings, if any, whether written or oral . . . ." Thus, the plain language of the plea agreement grants the Government the sole discretion to decide whether to move for a downward departure pursuant to U.S.S.G. § 5K1.1.

Moody argues that even if the plea agreement itself did not actually require the Government to move for a downward departure, he reasonably understood the plea agreement to include such a requirement based on the October 5 email exchange. Moody argues that, based on this email exchange, he reasonably believed that he would get credit for cooperating with the state attorney general, and the Government cannot now back out of this agreement and refuse to give Moody "credit" for doing so.

Moody's argument fails for several reasons. First, it was unreasonable for Moody to believe that the Government would be required to depart downward based on this email exchange, because the plea agreement's merger clause made clear that the plea agreement represented the complete and only agreement to which the parties would be held. Second, Moody's email requesting "credit" for cooperation with state authorities failed to explain that such cooperation was the result of a previous unrelated arrest rather than the result of the bargained-for exchange implicit in the plea agreement. Moody could not reasonably expect that the Government would credit him once it understood the details of his cooperation, and it is unreasonable for him to believe that his convenient

6

omission could thus bind the Government. Finally, the reply email only stated that Moody would be credited "[i]f he cooperated," a contingent statement that clearly left the Government with the discretion to determine whether Moody "cooperated" under the terms of the plea agreement. To the extent that Moody believed the reply email obligated the Government to "credit" him regardless of the facts or circumstances of the cooperation, such a belief was clearly unreasonable. In sum, the Government did not breach the terms of the plea agreement because its conduct was not "inconsistent with what was reasonably understood" by Moody based on the October 5 email or the terms of the plea agreement itself.

## VI.

For the reasons set forth above, we will affirm the sentence of the District Court.