# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 2, 2013

No. 11-20726

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SCOTT MICHAEL LONG, also known as Hollywood, also known as Wood,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and SMITH and WIENER, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Scott Michael Long ("Long") appeals his sentence, which is based on the district court's ruling that the Government did not breach its plea agreement with him. On appeal, Long contends that the Government agreed in an e-mail exchange that it would not seek a leader/organizer sentencing enhancement pursuant to U.S.S.G. § 3B1.1(a), and that the Government breached the plea agreement by supporting the enhancement recommended in the presentence investigation report ("PSR") and supporting it at sentencing. Long thus maintains that his sentence should be vacated and the matter remanded for resentencing before a different judge. Finding no error, we AFFIRM the district court.

No. 11-20726

## I.

### A.     Indictment and Pre-Plea Agreement Negotiations

On July 27, 2009, Long and 16 others were charged in a superseding indictment with numerous drug offenses after an FBI investigation revealed that a street gang in Freeport, Texas trafficked large amounts of cocaine powder and base from 2007 to 2009. The investigation revealed that Long was responsible for distributing large amounts of cocaine powder and base in Freeport and for transporting and distributing cocaine in Fort Myers, Florida. Based on his involvement, Long was charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii), and 841(b)(1)(A)(iii) ("Count One"); possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii) ("Count Fourteen"); and possession with intent to distribute a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Fifteen").

Approximately one month prior to Long's guilty plea, on December 23, 2010, Long's counsel e-mailed the Assistant United States Attorney ("AUSA") assigned to Long's case to confirm the Government's position.[1] The e-mail stated,

> I want to make sure I understand your position on Scott Long's case. I don't want to give my client any incorrect information, especially since he is still having a lot of difficulty with his son's death.
>
> My recollection of our conversation was that you would not agree to recommending that the career offender status was inappropriate in this case but that you would not argue in favor of it either. You would, however, agree to not seek any statutory enhancements

---

[1] For ease of reference, the opinion will refer to the December 23, 2010 and January 6, 2011 e-mails as "the e-mail exchange."

2

No. 11-20726

> based upon his prior convictions. You would not argue for a manager/supervisor, etc., enhancement. You believe the drug weight would be based on approximately ½ kilo of cocaine per month from 2007 to 2009. You would not seek an enhancement based on the gun found in Florida.
>
> With the career offender enhancement, he is still facing a very substantial sentence.
>
> Please let me know if I misunderstood anything we discussed. Also, please talk with the agents who debriefed him and let me know where he stands as far as a 5K1 motion. I am certain he is willing to answer any additional questions.
>
> If we don't talk, I hope you and your family have a safe and happy holiday.

After he did not receive a response, Long's counsel re-sent the e-mail to the AUSA on January 6, 2011. Later that day, the AUSA sent a reply e-mail, which stated,

> Sorry I did not respond earlier. I blame the holidays.
> I believe you have stated everything correctly.
> Let me know when we can get this done.

## B.    Guilty Plea Hearing

On January 21, 2011, Long pled guilty to Count One pursuant to a written plea agreement. Under the terms of the plea agreement, Long agreed to cooperate with the Government and waived his right to appeal his sentence on direct appeal or to collaterally attack his sentence under 28 U.S.C. § 2255.[2] In

---

[2] Long's appeal waiver does not affect his ability to raise a breach argument because an alleged breach of a plea agreement may be raised despite a waiver provision. *See United States v. Keresztury*, 293 F.3d 750, 756-57 (5th Cir. 2002) (noting that where the Government has breached a plea agreement, the defendant is necessarily released from any appeal waiver provision contained therein).

exchange for the plea, the Government agreed to dismiss Counts Fourteen and Fifteen along with the original indictment and not to oppose Long's anticipated request for a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). The Government further agreed that it would move for an additional one-point reduction for acceptance of responsibility at sentencing if Long's offense level was 16 or greater. The plea agreement made no mention of the Government's stance as to a leader/organizer enhancement. As a final matter, the plea agreement contained a merger clause, which indicated that the plea agreement represented the complete agreement between Long and the Government. The merger clause provided,

> This written plea agreement, including the attached addendum of defendant and his attorney, constitutes the complete plea agreement between the United States, defendant[,] and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

Long acknowledged the accuracy of the plea agreement after the AUSA summarized the contents before the district court.

Before accepting Long's plea, the district court inquired into the circumstances surrounding Long's plea. Specifically, the district court asked Long: "[A]re there any other or different promises or assurances that were made to you in an effort to persuade you to plead guilty that did not get written down in the plea agreement" or whether there was any "secret agreement out there someplace?" Long responded, "No, ma'm." The district court subsequently accepted Long's plea and adjudged him guilty of Count One.

## C.    PSR and Objections

No. 11-20726

On May 24, 2011, a probation officer prepared a PSR. Due to the nature of Long's offense, the PSR calculated a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(c)(1), a two-level upward adjustment pursuant to U.S.S.G. § 2D1.1(b)(1) because three firearms were located at a rental house where cocaine was stored and cooked into crack; and a four-level upward adjustment pursuant to U.S.S.G. § 3B1.1(a) because Long was deemed a leader/organizer of a criminal activity that involved five or more participants. The PSR also recommended a three-level reduction for Long's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). In sum, Long's total offense level was calculated as 41 with a total criminal history category of IV. The Sentencing Guidelines recommended an imprisonment term range of 360 months to life.

On July 28, 2011, Long's counsel filed objections to the PSR claiming, *inter alia*, that there was no evidence that Long was a leader in the drug trafficking organization and that the e-mail exchange prohibited the Government from seeking a leader/organizer enhancement. In an e-mail to the AUSA dated July 28, 2011, Long's counsel stated,

> In an e-mail exchange we had between December 23, 2010 and January 6, 2011, you agreed not to seek enhancements for the guns or the organizer/manager role. (Let me know if you'd like me to forward the messages.)

On August 8, 2011, the AUSA responded,

> Can you send me the e[-]mail where I agreed to not seek the enhancement for Organizer/manager. I can't remember that e[-]mail. I'm not saying I never agreed to that, I just don't remember discussing role. I remember the rest.
>
> He's earned a 5K so I will file it as the sentencing gets closer.

Long's counsel subsequently forwarded the e-mail but received no follow-up correspondence from the AUSA.  On September 20, 2011, the AUSA filed a "Response Under Local Rule 32.6" stating that it took "no issue with the factual content of the [PSR]," that it believed the PSR to be "accurate," and that it had no objection "to the Guideline computation reached in the [PSR]."

**D.     Long's Motion to Enforce the Agreement and Sentencing Hearing**

On October 5, 2011, two days prior to sentencing, Long's counsel filed a sealed motion seeking to enforce the agreement, citing the e-mail exchange as evidence that the Government agreed not to seek a leader/organizer enhancement.  At the sentencing hearing, the AUSA responded that the plea agreement represented the complete terms governing the plea and that the Government abided by its terms.  Furthermore, the AUSA noted that the Government did not promise to not seek the leader/organizer enhancement and explained, "[t]here's no way that I would have ever agreed" because "[Long] was always the target of our investigation."

The district court subsequently asked Long's counsel, "[I]s it correct that the plea agreement itself does not specify that the government will not argue for a four level [leader/organizer enhancement]?"  In response, Long's counsel acknowledged that the plea agreement did not preclude the Government from arguing for a leader/organizer enhancement, but noted that the "[t]he actual wording in the plea agreement does not govern [the leader/organizer enhancement] issue."

The district court denied Long's motion on the basis that the e-mail exchange did not represent an extra promise precluding the Government from seeking a leader/organizer enhancement.  The district court further concluded that even if there was such an agreement, the Government did not breach the agreement by maintaining that the PSR was factually accurate.  Consequently, the district court adopted the PSR's recommended calculation, granted the

No. 11-20726

Government's § 5K1.1 motion for a downward departure, and sentenced Long to 235 months of imprisonment, to be followed by a five-year term of supervised release.  Long timely appealed.

## II.

We review a claim of breach of a plea agreement de novo, accepting the district court's factual findings unless clearly erroneous. *United States v. Loza-Gracia,* 670 F.3d 639, 642 (5th Cir. 2012) (citation omitted).

## III.

### A.

Long concedes that the terms of the plea agreement did not preclude the Government from seeking a leader/organizer enhancement.  Long asserts, however, that the e-mail exchange is part of the plea agreement because it reasonably induced him to plead guilty.  *See Santobello v. New York*, 404 U.S. 257, 262 (1971). Long contends that by seeking the enhancement, the Government breached the plea agreement and cites *United States v. Melton*, 930 F.2d 1096 (5th Cir. 1991), and *United States v. Garcia*, 956 F.2d 41 (4th Cir. 1992), as supporting authority. We conclude that Long's argument is unavailing, and we hold that the Government did not breach the plea agreement.

### B.

This court applies general principles of contract law in interpreting the terms of a plea agreement.  *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (citation omitted).  In interpreting a contract, this court looks "to the language of the contract, unless ambiguous, to determine the intention of the parties." *In re Conte*, 206 F.3d 536, 538 (5th Cir. 2000).  Although circumstances surrounding the agreement's negotiations might indicate the intent of the parties, "parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement."  *United States v. Ballis*, 28 F.3d 1399, 1410 (5th Cir. 1994) (citation omitted).  Thus, when a contract is unambiguous, this court generally

will not look beyond the four corners of the document. *See Elashyi*, 554 F.3d at 502 (citation omitted). "The defendant bears the burden of demonstrating the underlying facts that establish breach by a preponderance of the evidence." *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010) (citation omitted). "If the Government breaches a plea agreement, the defendant is entitled to specific performance of the agreement with sentencing by a different judge." *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005) (citations omitted).

## C.

In *Melton*, this court considered extrinsic evidence notwithstanding the plea agreement's provision that it represented the "entire agreement." 930 F.2d at 1098.[3] *Melton* involved a promise contained in the cover letter that the Government would recommend a downward departure based on co-defendant Roger's "full and complete debriefing and substantial assistance to the government." *Id.* The cover letter was attached to the plea agreement, but the plea agreement did not include the promise contained in the cover letter. *Id.* At sentencing, the AUSA indicated that Roger complied with the terms of the plea agreement, but declined to seek a downward departure. *Id.*

On appeal, Roger argued that the Government's failure to move for a downward departure constituted a breach of the plea agreement. *Id.* In

---

[3] In *United States v. Fields*, we confronted a similar issue as in *Melton*. 906 F.2d 139, 141 (5th Cir. 1990). In that case, the defendant argued that the Government breached a plea agreement when it indicated in a cover letter that it would recommend a downward departure if the defendant truthfully debriefed and cooperated with the Government. *Id.* The plea agreement did not contain this condition and only stated that the defendant should give a "full, complete, and truthful statement to law enforcement authorities. . . ." *Id.* The Government subsequently remedied the situation by moving for a downward departure in the event that the district court found substantial compliance by the defendant. *Id.* at 142. The district court denied the Government's motion because the defendant provided false statements during debriefing. *Id.* We remarked that "[the cover letter and plea agreement], when read together, demonstrate the agreement that if [defendant] gave a full debriefing and his full cooperation then the [G]overnment would recommend a downward departure." *Id.* We affirmed, however, the district court's ruling that the defendant did not provide "substantial assistance" based on his false statements to law enforcement officials. *Id.* at 143.

response, the Government asserted that we should ignore the cover letter and "look no further than the four corners of the plea agreement." *Id.* We ultimately concluded that the record was "inadequate" to determine whether Roger relied on the cover letter, accepted the Government's promise, and fully complied under the specific facts of the case. *Id.* We noted, however, that the cover letter was "not part of the plea agreement proper [but] it [did] contain an offer by the government which Roger ostensibly accepted." *Id.* As such, we declined to apply traditional contract principles and invoked *Fields's* reasoning that "'[t]he [cover letter and plea agreement], when read together, demonstrate the agreement that if Appellant gave a full debriefing and his full cooperation then the Government would recommend a downward departure.'" *Id.* (quoting *Fields,* 906 F.2d at142). The *Melton* court also highlighted that the Government has an obligation to fulfill promises reasonably relied on by a defendant by stating:

> [T]he government may neither misrepresent its intentions nor renege on representations reasonably relied and acted upon by defendants and their counsel in instances such as here presented. . . . If Roger, in reliance on the letter, accepted the government's offer and did his part, or stood ready to perform but was unable to do so because the government had no further need or opted not to use him, the government is obliged to move for a downward departure.

*Id.* at 1098-99.

Similarly, in *Garcia,* the Fourth Circuit addressed the legal significance of a cover letter-plea agreement coupling in a 28 U.S.C. § 2255 proceeding. 956 F.2d at 42. In *Garcia*, a cover letter, which was attached to a plea agreement, memorialized an oral agreement by the Government that Garcia was not required to cooperate with law enforcement as part of his plea deal. *Id.* The plea agreement did not contain this provision, and Garcia subsequently pled guilty. *Id.* Garcia was later subpoenaed to testify in grand jury proceedings but

he refused, and he was held in contempt. *Id.* at 42-43. The Fourth Circuit observed that plea agreements are construed consistent with commercial contract principles but cautioned against the strict application of such principles in the plea agreement context. *Id.* at 43. Based on these principles, the *Garcia* court held that the promise contained in the cover letter was part of the plea agreement. *Id.* at 44. Long does not identify, however, nor have we discovered, any case in which a court looked beyond a cover letter attached to a plea agreement. We decline to do so here.[4]

### D.

This case is distinguishable from our decision in *Melton* and the Fourth Circuit's decision in *Garcia.* In both cases, the extrinsic promise was contained in a cover letter attached to the plea agreement. As a result, the courts construed the cover letter and the plea agreement together. *See Melton*, 930 F.2d at 1098; *Garcia,* 956 F.2d at 44. In the instant case, the e-mail exchange was not attached to the plea agreement, was completed weeks prior to Long's guilty plea, and copies thereof were not transmitted contemporaneously with the plea. Accordingly, *Melton* and *Garcia* are inapposite.

Although Long's counsel asserts on appeal that he showed Long the e-mail exchange prior to his guilty plea, the record demonstrates that, based on his own responses during the plea colloquy, Long did not rely on the e-mail exchange in pleading guilty. Of particular relevance, the district court inquired into whether there were any extrinsic agreements not included in the plea agreement that persuaded Long to plead guilty–the very argument that Long asserts in support of his appeal. Specifically, the district court asked Long: "[A]re there any other or different promises or assurances that were made to you in an effort to persuade you to plead guilty that did not get written down in the plea

---

[4] We have refused to consider even a cover letter that contained terms arguably more favorable to the Government, the drafting party. *See Elashyi*, 554 F.3d at 502.

No. 11-20726

agreement" and whether there was any "secret agreement out there someplace?" Long responded in the negative. As "[s]olemn declarations in open court carry a strong presumption of verity," we give great weight to Long's response that no secret promises or agreements existed. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). We further conclude that Long's reliance on the e-mail exchange would be unreasonable in light of the plea agreement's merger clause stating that the written plea agreement constitutes the complete agreement among the Government, Long, and Long's counsel.[5]

## IV.

For the foregoing reasons, we AFFIRM the sentence, which is based on the district court's ruling that the Government did not breach the plea agreement.

---

[5] *See United States v. Moody*, 485 F. App'x 521, 523-24 (3d Cir. 2012) (concluding that defendant's argument that he reasonably relied on an e-mail exchange in which the AUSA agreed to move for a downward departure if the defendant cooperated was unreasonable because, *inter alia*, the merger clause stated that the plea agreement represented the complete agreement).