# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2022

Lyle W. Cayce
Clerk

No. 21-11103

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Deon Bell,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CR-160-1

Before Smith, Barksdale, and Haynes, *Circuit Judges*.

Per Curiam:*

Primarily at issue is whether, in addition to the district court's ordering restitution by Christopher Deon Bell for his guilty-plea conviction for robbery, its ordering restitution for losses stemming from two related uncharged robberies exceeded its authority to award restitution as expanded by his plea agreement, therefore resulting in an illegal sentence. We hold Bell agreed to make restitution for the uncharged robberies. AFFIRMED.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-11103

## I.

Bell pleaded guilty, pursuant to a written plea agreement, to interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a); and using, carrying, or brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The following, with one noted exception, is according to the factual resume accompanying his plea agreement.

On 22 March 2020, Bell:  entered a Subway restaurant on South Freeway in Fort Worth, Texas; asked to purchase cookies; displayed a handgun after an employee opened the register; demanded the money inside; and left with about $240.  According to the criminal complaint filed against Bell, the employee saw Bell flee in a black Nissan sedan.

Another Subway, located on Meadowbrook Drive, was robbed in that city the same day, with another on 6 April, located on Trail Lake Drive in that city.  On both occasions, the offender:  asked to purchase cookies; displayed a firearm after the register was opened; demanded money; and left in a Nissan sedan. For those two robberies, $180 was stolen from the Meadowbrook Subway; $37, from the Trail Lake Subway.

For the three robberies, Bell was charged only with the one on South Freeway.  Pertinent to this appeal are paragraphs 3(e) and 6 of his June 2021 plea agreement.  Paragraph 3(e) provided:

> The maximum penalties the Court can impose . . . include the following:
>
> . . .
>
> restitution to victims or to the community, which may be mandatory under the law, and which the defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone.

No. 21-11103

Paragraph 6 provided:

> Pursuant to 18 U.S.C. §§ 3663(a) and 3663A, the defendant agrees to pay restitution for losses resulting from the defendant's criminal conduct, including losses resulting from relevant conduct involving other Subway restaurant robberies.

The agreement further provided Bell's sentence would run concurrently with any other sentences imposed involving his robbing Subway restaurants, including an anticipated sentence from charges Bell was facing in Texas state court for the second Subway robbery (Meadowbrook Drive). Additionally, the Government agreed not to bring further charges against Bell "based upon the conduct underlying and related to" his guilty plea. Bell also generally waived his right to contest his conviction and sentence, but he reserved the right to, *inter alia*, appeal "a sentence exceeding the statutory maximum punishment".

The probation officer's presentence investigation report (PSR) recommended that the Meadowbrook and Trail Lake robberies be classified as "Offense Behavior not Part of Relevant Conduct", therefore not considered in determining Bell's advisory Sentencing Guidelines range. The PSR, however, suggested there was sufficient evidence to conclude Bell was involved in those robberies, and recommended restitution in the amount of $632: the amounts stolen from all three Subways and the estimated loss resulting from the South Freeway Subway's closing early after the robbery.

Bell objected to the PSR, maintaining: if the court believed he committed the additional robberies, they should be classified as relevant conduct under the Guideline § 1B1.3(a)(2) definition because they were part of the same course of conduct, so that his sentence would run concurrently with any anticipated state sentences, pursuant to Guideline § 5G1.3. *See* U.S.S.G. § 1B1.3(a)(2) (if charged offense is groupable under Guideline

No. 21-11103

§ 3D1.2(d), certain acts and omissions by defendant "that were part of the same course of conduct or common scheme or plan" are relevant conduct); § 5G1.3 (sentence shall run concurrently to other resulting or anticipated sentences based on relevant conduct to instant offense).

The Government responded: because robbery is a non-groupable offense under Guideline § 3D1.2(d), the additional robberies were not considered relevant conduct under the Guidelines. U.S.S.G. § 3D1.2(d) (multiple counts grouped together if offense level is "determined largely" on basis of, *inter alia*, "the total amount of harm or loss [or] the quantity of a substance involved"); *see* § 1B1.3 cmt. background (robbery does not "depend substantially on quantity" and therefore is not groupable under Guideline § 3D1.2(d)); § 1B1.3(a)(2) (Relevant conduct includes, *inter alia*, "solely with respect to offenses of a character for which [Guideline] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in [§ 1B1.3(a)(1)(A), (B)] that were part of the same course of conduct or common scheme or plan as the offense of conviction".).

The probation officer agreed with the Government and noted Bell's objection could be moot if the plea agreement was accepted because, as noted *supra*, it provided for his sentence to run concurrently with any additional sentences resulting from the robberies.

During the sentencing hearing, the court accepted the plea agreement; Bell withdrew his objection to the PSR; and the court adopted the PSR. At the conclusion of the hearing, the court ordered, *inter alia*, the $632 in restitution recommended by the PSR; and Bell did not object to the basis for, or amount of, restitution.

II.

The two issues at hand are whether Bell waived his right to this appeal; and, if not, whether the restitution order exceeded the statutory maximum.

4

No. 21-11103

### A.

As noted *supra*, contesting "a sentence exceeding the statutory maximum punishment" was one of the exceptions to Bell's appeal waiver in his plea agreement.  Upon his appealing the restitution order, the Government moved in this court to dismiss the appeal, contending it was barred by the waiver.  Although the motion was denied by a motions panel, the Government pressed this contention again in its brief.  *E.g.*, *Newby v. Enron Corp.*, 443 F.3d 416, 419 (5th Cir. 2006) ("In this circuit, an oral argument panel is not bound by a motions panel's denial of a motion to dismiss." (citation omitted)).

Bell's appeal was not waived.  *United States v. Kim*, 988 F.3d 803, 811 (5th Cir. 2021) ("[A]n otherwise valid appeal waiver is not enforceable to bar a defendant's challenge on appeal that his sentence, including the amount of a restitution order, exceeds the statutory maximum".).  (We note our court's recent decision in *United States v. Meredith*, 52 F.4th 984 (5th Cir. 2022): Bell, unlike defendant in *Meredith*, challenges the district court's underlying authority to award the restitution, rather than an error in calculation.)

### B.

Before turning to Bell's claim that the restitution exceeded the statutory maximum, the underlying contested standard of review must first be addressed.

### 1.

It is undisputed Bell failed in district court to preserve the restitution issue.  The parties disagree on whether our review is *de novo* or for plain error.  Of course, we, not the parties, decide which standard applies.  *E.g.*, *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc).

No. 21-11103

Recently, *United States v. Swenson* recognized our court had been inconsistent in determining the applicable standard of review for unpreserved challenges to restitution orders claimed to exceed the statutory maximum.    25 F.4th 309, 322 (5th Cir. 2022).    *Compare United States v. Nolen*, 472 F.3d 362, 382 (5th Cir. 2006) (reviewing *de novo*), *with United States v. Maturin*, 488 F.3d 657, 660 (5th Cir. 2007) (reviewing for plain error).    *Swenson* held, under the rule of orderliness, the earlier opinion (*Nolen*) controlled; therefore, *de novo* review applied.    *Swenson*, 25 F.4th at 322; *see Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (Under the rule of orderliness, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law".).

The Government, however, points to *United States v. Inman*, which was decided before *Nolen* and applied plain-error review.    *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005).    It contends, under the rule of orderliness, the earliest decision (*Inman*) controls, rather than *Swenson* or *Nolen*.

While recognizing this conflict, "[w]e need not decide the standard of review that applies to this case because, even if we apply the least deferential standard—de novo review—we still find no error".    *Hernandez v. United States*, 888 F.3d 219, 222–23 (5th Cir. 2018).

2.

Two sources of statutory authority for restitution are relevant here. First, 18 U.S.C. §§ 3663 and 3663A authorize the court to award restitution to "victims of the offense".    §§ 3663(a), 3663A(a).    Pursuant to that source of authority, "the restitution award can encompass only those losses that result directly *from the offense for which the defendant was convicted*".    *United States v. Benns*, 740 F.3d 370, 377 (5th Cir. 2014) (emphasis added) (citation omitted).    Second, §§ 3663 and 3663A provide, as an additional source of

authority, that the court may award restitution for which defendant in a plea agreement agreed to be responsible. §§ 3663(a)(3), 3663A(a)(3). Therefore, any restitution awarded by the court must have either been for a victim of Bell's charged offense, or agreed to by him in the plea agreement; otherwise, the order exceeds the maximum allowed by statute.

The parties agree that, unlike the South Freeway Subway, the Meadowbrook and Trail Lake Subways were not "victims" of Bell's charged offense. *See* § 3663(a)(3) ("'victim' means a person directly and proximately harmed as a result of the commission of an offense"); § 3663A(a)(2) (same); *Benns*, 740 F.3d at 377 ("[R]estitution to victims of the offense . . . can encompass only those losses that resulted directly *from the offense for which the defendant was convicted*". (emphasis added) (citation omitted)). Accordingly, as discussed above, the district court could order restitution for those two robberies only to the extent agreed to in the plea agreement. *See* 18 U.S.C. §§ 3663, 3663A; *Benns*, 740 F.3d at 377 ("The general rule is that a district court can award restitution to victims of the offense. . . . However, the court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim." (citations omitted)).

"This court applies general principles of contract law in interpreting the terms of a plea agreement." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013). Ambiguities are construed against the Government. *E.g.*, *United States v. Farias*, 469 F.3d 393, 397 (5th Cir. 2006); *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). We do not, however, "read ambiguity into an agreement in which none readily manifests itself". *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011).

Where the agreement is unambiguous, our court does not consider parol evidence; rather, we rely solely on the agreement's language to determine the intent of the parties. *E.g.*, *Long*, 722 F.3d at 262; *Elashyi*, 554

F.3d at 502; *see also In re Conte*, 206 F.3d 536, 538 (5th Cir. 2000) ("[I]t is [the] written objective evidence of intent, not the parties' subjective understandings, that controls our analysis".). And, where an agreement lacks such written objective evidence "that the parties . . . intended . . . a specialized, non-natural definition, we apply [a] term's usual and ordinary meaning". *United States v. Bond*, 414 F.3d 542, 545 (5th Cir. 2005).

Further, interpretations which would render a phrase "completely meaningless" are contrary to the "basic rule of contract interpretation" that "every clause is intended to have some effect". *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993); *e.g.*, *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 490 (5th Cir. 2007) ("[W]e must ensure that each provision of the contract is given effect and none are rendered meaningless".); Restatement (Second) of Contracts § 203(a) (Am. L. Inst. 1981) ("interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); *see also United States v. Antunez*, 269 F. App'x 528, 529 (5th Cir. 2008) (applying principle to interpretation of plea agreement); *United States v. Ataya*, 864 F.2d 1324, 1335 (7th Cir. 1988) (same); *United States v. DeWitt*, 366 F.3d 667, 669–70 (8th Cir. 2004) (same); *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2015) (same).

Bell presents the following contentions. "Relevant conduct", as used in the plea agreement, is a term of art having the same meaning as in the Guidelines. Therefore, paragraphs 3(e) and 6 show he agreed to pay restitution for the additional robberies only if they were relevant conduct under the Guidelines. Paragraph 3(e) required any additional restitution to be on account of relevant conduct. Paragraph 6's language "including losses resulting from relevant conduct involving other Subway restaurant robberies" served to modify the preceding phrase "criminal conduct" in

order to reflect the agreed-upon limitation from paragraph 3(e). By ordering the restitution, despite adopting the PSR's recommendation that the additional robberies were non-relevant conduct, the court erred by imposing a sentence in excess of that allowed by statute.

The Government counters as follows. For restitution purposes, "relevant conduct", as used in the plea agreement, did not incorporate the technical definition used in the Guidelines. Rather, the agreement as a whole shows Bell "explicitly agreed to pay restitution for the two [uncharged] robberies in exchange for the [G]overnment's agreement not to charge him with those robberies and to run his sentence concurrent to the anticipated state sentences for those robberies". Further, Bell's interpretation would render paragraph 6 meaningless. Because the additional robberies would never be relevant conduct under the Guidelines due to the grouping rules, paragraph 6 would not permit restitution for those robberies under any circumstance. *See* U.S.S.G. § 1B1.3 (defining relevant conduct); § 1B1.3 cmt. background (robbery not groupable under Guideline § 3D1.2(d) because does not "depend substantially on quantity"). The court's restitution order was consistent with the parties' agreement.

For the below reasons, we hold the following. The plea agreement is not ambiguous; therefore, our analysis is confined to its four corners. *E.g.*, *Long*, 722 F.3d at 262. Its language shows Bell agreed to pay restitution for the two additional robberies in exchange for the Government's promises to not bring further charges and to run his sentence concurrently with any other sentences resulting from the robberies.

a.

First, the agreement lacks objective written evidence that the parties intended "relevant conduct" to carry the "specialized, non-natural definition" from the Guidelines. *Bond*, 414 F.3d at 545; *see* U.S.S.G.

§ 1B1.3(a)(2) (Relevant conduct includes, *inter alia*, "solely with respect to offenses of a character for which [Guideline] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in [§ 1B1.3(a)(1)(A), (B)] that were part of the same course of conduct or common scheme or plan as the offense of conviction".).

The agreement does not define "relevant conduct" or explicitly incorporate the Guidelines definition, nor are the Guidelines referred to at all in the restitution provisions. *Cf. Jacobs*, 635 F.3d at 780, 782 (considering "departure" a "term of art under the Guidelines", therefore applying its "well-settled meaning in the sentencing context" *but* where relevant provision of plea agreement referred to "an upward departure from the Sentencing Guidelines").

Applying the term's ordinary meaning, Bell agreed to pay restitution for conduct "bearing upon or connected with" his charged offense to which he pleaded guilty: robbery of the South Freeway Subway. *Relevant*, DICTIONARY.COM, https://www.dictionary.com/browse/relevant (last visited 16 Nov. 2022). Compared to Bell's charged offense, the Meadowbrook and Trail Lake Subway robberies involved the same restaurant franchise, the same city, and identical *modus operandi*, and each occurred within around two weeks of his offense. That relevant conduct carried this non-technical definition, and that the Meadowbrook and Trail Lake robberies fell within this definition, is "in accord with the intent of the parties". *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005).

Bell agreed to pay the additional restitution, and in return, the Government agreed: it would not bring further charges; and his sentence would run concurrently with any other sentences he might face based on the two additional robberies, which would not have otherwise been mandatory because those robberies were not relevant conduct under the Guidelines. *See*

U.S.S.G. § 5G1.3 (sentence shall run concurrently to other resulting or anticipated sentences based on relevant conduct to instant offense, otherwise sentence for instant offense "may be imposed to run concurrently, partially concurrently, or consecutively").

b.

Assuming, *arguendo*, the plea agreement did incorporate the Guidelines definition of relevant conduct, we would not hold differently. As discussed, Bell agreed in paragraph 3(e) that the maximum penalties the court could impose "*may include* restitution arising from all relevant conduct" (emphasis added). Bell agreed in paragraph 6 "to pay restitution for losses resulting from [his] *criminal conduct*, *including* losses resulting from relevant conduct involving other Subway restaurant robberies" (emphasis added).

The uses of "include" and "including" are not limiting. Rather, "include" means "to contain as part of something". *Include*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, pursuant to paragraph 3, the maximum penalties could *contain*, *but were not limited to*, restitution from relevant conduct. And under paragraph 6, which more directly addresses restitution, Bell agreed to pay restitution for his *criminal conduct*, which could *contain*, *but was not limited to*, losses resulting from his relevant conduct involving Subway robberies. *See* RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (AM. L. INST. 1981) ("[S]pecific terms and exact terms are given greater weight than general language".); *see also id.* § 203 cmt. e ("[I]n case of conflict the specific or exact term is more likely to express the meaning of the parties with respect to the situation than the general language".). Even if the additional robberies were not relevant conduct, they were criminal conduct; Bell agreed to pay restitution for such criminal conduct; and his agreement was not limited by the "including"

phrase. (Bell does not contest the district court's concluding he was involved in the two additional robberies nor that the robberies fall under the phrase "criminal conduct".)

Finally, as the Government contends, holding the court's authority to award restitution was limited to relevant conduct under the Guidelines would render meaningless Bell's agreeing in paragraph 6 "to pay restitution for losses resulting from [his] criminal conduct, including losses resulting from relevant conduct involving other Subway restaurant robberies".

As discussed *supra*, Guideline § 1B1.3(a)(2) provides: for offenses which Guideline "§ 3D1.2(d) would require grouping of multiple counts", certain acts and omissions by defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction" are relevant conduct. § 1B1.3(a)(2). Robbery convictions, however, do not "depend substantially on quantity", and therefore, are not groupable offenses under Guideline § 3D1.2(d). § 1B1.3 cmt. background; *see id.* ("[I]n a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would not be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan".).

Therefore, because robbery is a non-groupable offense, the Meadowbrook and Trail Lake robberies would never be considered relevant conduct under the Guidelines. If Bell's purported interpretation was accepted, paragraph 6's language would have no effect, never requiring him to pay additional restitution.

## III.

For the foregoing reasons, the judgment is AFFIRMED.